

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| FALLON LUMINOUS PRODUCTS CORP., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 6:04-22457-HFF |
| | § | |
| EVERBRITE LLC, | § | |
| | § | |
| Defendant. | § | |

**CLAIM CONSTRUCTION ORDER**

**I.     INTRODUCTION**

This is a patent infringement case in which Plaintiff alleges that neon signs sold by Defendant infringe Plaintiff's design patent, U.S. Patent No. D484,916S (the '916 patent). The Court has jurisdiction pursuant to 28 U.S.C. § 1338(a), 15 U.S.C. § 1121(a), and 28 U.S.C. § 1332. This matter is presently before the Court for a construction of the claims made in the '916 patent.

**II.     DISCUSSION**

In this case, the Court is required to construe a design patent. A design patent protects the non-functional aspects of an ornamental design as shown in the patent drawings. *See* 35 U.S.C. § 171. The proper construction of a design patent focuses on the overall visual impression of its ornamental features. *OddzOn Products, Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997). It is this Court's duty to translate the patent drawings into a written description that evokes the visual image of the claimed design. *Durling v. Spectrum Furniture Co.*, 101 F.3d 100, 103 (Fed.

Cir. 1996). The proposed construction of a design patent must be specific enough to assist the jury in determining whether the accused design appropriates the points of novelty of the patented design. *See Catalina Lighting, Inc. v. Lamps Plus, Inc.*, 295 F.3d 1277, 1286-87 (Fed. Cir. 2002) ("[T]he fact-finder must determine whether the accused design appropriates the points of novelty that distinguish the patented design from the prior art." (citing *Contessa Food Products, Inc. v. Conagra, Inc.*, 282 F.3d 1370, 1377 (Fed. Cir. 2002))). The points of novelty are the "novel ornamental features of the patented design that distinguish it from the prior art." *Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1577 (Fed. Cir. 1995) (citing *Oakley, Inc. v. Int'l Tropic-Cal, Inc.*, 923 F.2d 167, 169 (Fed. Cir. 1991)). While the claim of a patent is fairly broad and refers only to the figures accompanying the patent, as stated above, a court's construction of that claim should be reduced to words for ease of use by the jury during the infringement stage of the action.

In the instant case, Plaintiff and Defendant have submitted proposed claim constructions to the Court. Plaintiff asserts that the Court should adopt the following construction:

> The '916 patent, owned by Fallon Luminous Products, includes the following features, as illustrated by Figures 1-2 of the patent:
>
> A design for glass tubing of a neon sign having a letter O, letter P, letter E, and letter N, all of the same height, spelling the word OPEN placed within and protruding from "an asymmetrical oval" shape that is created by the letter O and the letter N protruding through opposite sides of an oval.

Defendant, on the other hand, proposes a more detailed construction:

> 1. A neon sign with tubing that forms an asymmetrical broken oval shape that includes an upper curve and a lower curve.
>
> 2. Centered on and intersecting the upper and lower curves is a word formed of a capital O, capital P, lower-case e, and capital N. The letters are the same height and slant to the right, *i.e.*, are italicized.
>
> 3. The upper curve of the oval begins near the upper right side of the letter O and arcs to the right and away from the remaining letters, reaching its apex approximately

between the top right of the e and the top left of the N. From there, the upper oval makes a hairpin bend downward, ending adjacent the lower right side of the letter N.

4. The lower curve begins near the lower center left side of the letter O and arcs to the right, downward and away from the letters until about the middle of the letter P, when it curves back upward, ending nearly adjacent the lower right point of the letter N.

5. If extended and connected, the right ends of the curved tubes would intersect the lower-right point or portion of the letter N. As shown, only the bottom right corner point of the N intersects with and protrudes from the broken oval outline.

6. The upper and lower curves are aligned diagonally from the bottom left to the top right, such that the left side of the oval is below the right side of the oval.

7. As shown in Figure 2, the upper left of the letter P nearly touches the upper curve, and the lower left point of the letter N nearly touches the lower curve. If connected, the oval resulting from the upper and lower curves would be relatively narrow.

The Court finds that Plaintiff's proposed construction is overly broad. While Plaintiff's proposed construction is not so broad as to constitute a general design concept, it lacks sufficient detail to evoke a visual image of a particular design. *E.g., OddzOn*, 122 F.3d at 1405 (stating that a construction should "properly limit[] the scope of the patent to its overall ornamental visual impression, rather than [a] broader general design concept[.]"). Plaintiff's construction would, for example, embrace a design in which the letter O and the letter N protrude out of the broken oval far more than they do in the figures of the '916 patent. Similarly, this construction would include designs in which the asymmetrical broken oval is slanted to the left, positioned vertically, or positioned diagonally. Rather than describing "what is shown in the application drawings," *In re Mann*, 861 F.2d 1581, 1582 (Fed. Cir. 1988), Plaintiff's proposed construction fails to evoke a visual image of the '916 patent and the Court must reject it.

In contrast, Defendant's suggested construction, on the whole, properly describes the details of the '916 patent. This construction evokes a visual image of the design of the '916 patent and is in accordance with this Court's previous constructions of similar patents. *E.g.,* Claim Construction

3

Order, *Fallon Luminous Products Corp. v. Everbrite, Inc.*, Civil Action No. 6:02-3437-26 (D.S.C. July 14, 2004). Further, Defendant's proposed construction is supported by the expert testimony of Roy Thompson and Wellington Manning. (Def.'s Br. Ex. 3 at 3; Ex. 4 at 13-15.)

Although the majority of Defendant's proposed construction properly describes the design of the '916 patent, Plaintiff has raised objections–several of which are valid–to various details of the construction. First, Plaintiff objects to Defendant's characterization of the letters as "slant[ed] to the right, *i.e.* . . . italicized," pointing to expert testimony which indicates that the slant of the letters in question makes no contribution to the overall ornamental features of the '916 patent. The Court finds this assertion unpersuasive. The slant of the letters does contribute to the overall design concept, as it allows them to flow with the rightward slant of the asymmetrical broken oval. The slant of the letters, however, is not pronounced enough to be termed italicized, thus the word "italicized" must be dropped from the claim construction.

Second, Plaintiff objects to the terms "apex" and "hairpin bend" as used in Defendant's proposed construction and contends that these terms are inaccurate in that they imply a sharpness and abruptness to the curve of the oval. The Court agrees that these terms do not accurately describe the curve of the oval in the design of the '916 patent and finds that they must not be included in the claim construction.

Third, Plaintiff objects to Defendant's characterization of the curves of the oval as "ending nearly adjacent to the lower right point of the letter N" and "nearly touch[ing] the lower curve." Specifically, Plaintiff asserts that Defendant's use of the word "nearly" is imprecise in that different people may define "nearly" in different ways. The Court disagrees. While "nearly" is not an exact

4

term when used to describe distance, it is capable of definition, and a reasonable man will understand what is conveyed by the use of "nearly" in the construction of the '916 patent.

Fourth, Plaintiff contends that Defendant's proposed construction should describe the design of the '916 patent as containing the word OPEN rather than merely noting that the design includes the letters O, P, E, and N. Although Defendant argues that the use of the word OPEN is functional in that it conveys to a viewer that an establishment is open for business, the Court finds that OPEN is not purely functional as used in the design here. Instead, OPEN here is at least partly ornamental in nature because the '916 patent chose one of several possible forms of the word. As Plaintiff notes, the message that an establishment is open could have been conveyed in a different font or with design elements added to the individual letters. Because Defendant has not shown that the use of the word OPEN is purely functional, it is properly included in the claim construction here. *Rosco, Inc. v. Mirror Lite Co.*, 304 F.3d 1373, 1378 (Fed. Cir. 2002) ("[T]he design of a useful article is deemed functional where the appearance of the claimed design is dictated by the use or purpose of the article. [T]he design must not be governed solely by function, *i.e.*, that this is not the only possible form of the article that could perform its function. When there are several ways to achieve the function of an article of manufacture, the design of the article is more likely to form a primarily ornamental purpose.") (internal citations omitted).

Finally, Plaintiff objects to Defendant's description of the letter E in the design as being lower case. While noting that the E appears to be lower case, Plaintiff maintains that the vertical ascender connecting the top and middle horizontal lines of the E is functional in that it serves only to connect the neon tubing of the sign. When the sign is lighted, Plaintiff claims, this vertical ascender remains dark and does not form part of the sign's ornamentation. The Court is unpersuaded

5

by Plaintiff's argument. Rather than distinguishing between the design when lighted and unlighted, the Court must look at the patent's drawings to construe its claim. *Amini Innovation Corp. v. Anthony California, Inc.*, 439 F.3d 1365, 1371 (Fed. Cir. 2006) ("[I]t is the drawings in the patent . . . that define the patented design."). Furthermore, Plaintiff had the ability to exclude the vertical ascender from its design when applying for the patent but chose not to do so. (Markman Hr'g Tr. 20, June 7, 2006.) As a result, the Court must give effect to the vertical ascender as rendered in the design drawings. *Contessa Food Products*, 282 F.3d at 1378 ("If features appearing in the figures are not desired to be claimed, the patentee is permitted to show the features in broken lines to exclude those features from the claimed design, and the failure to do so signals inclusion of the features in the claimed design.").

In addition to Plaintiff's objections to Defendant's proposed construction of the claim, the Court finds that paragraph seven of the construction should not be included. This paragraph speaks to a minute detail of the design which is unnecessary to evoke a visual image in the mind of a factfinder. *Durling*, 101 F.3d at 103. This is so because the descriptions of the design contained in the other paragraphs capture the close proximity between the oval and the word OPEN.

### III.  CONCLUSION

Based on the foregoing, the Court adopts the following claim construction for the '916 patent:

>1. A neon sign with tubing that forms an asymmetrical broken oval shape that includes an upper curve and a lower curve.
>
>2. Centered on and intersecting the upper and lower curves is the word OPEN, formed of a capital O, capital P, lower-case e, and capital N.  The letters are the same height and slant slightly to the right.
>
>3. The upper curve of the oval begins near the upper right side of the letter O and arcs

to the right and away from the remaining letters, beginning its downward curve between the top right of the e and the top left of the N. From there, the upper oval bends more sharply downward, ending adjacent the lower right side of the letter N.

4. The lower curve begins near the lower center left side of the letter O and arcs to the right, downward and away from the letters until about the middle of the letter P, when it curves back upward, ending nearly adjacent the lower right point of the letter N.

5. If extended and connected, the right ends of the curved tubes would intersect the lower-right point or portion of the letter N and the upper-left portion of the letter O. As shown, only the bottom right corner point of the N and the upper-left portion of the letter O intersect with and protrude from the broken oval outline.[*]

6. The upper and lower curves are aligned diagonally from the bottom left to the top right, such that the left side of the oval is below the right side of the oval.

**IT IS SO ORDERED**.

Signed this 15th day of June, 2006, in Spartanburg, South Carolina.

s/Henry F. Floyd
UNITED STATES DISTRICT JUDGE

---

[*] The Court has added language to this paragraph indicating that the letter O also protrudes slightly from the broken oval.